# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| KRISTA ANN FRESQUEZ, | Case No. 1:18-cv-114 |
| Plaintiff, | Barrett, J. |
| | Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## REPORT AND RECOMMENDATION

Plaintiff Krista Fresquez filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents four claims of error for this Court's review. As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the record as a whole.

### I. Summary of Administrative Record

In December 2012 and in early 2013,[1] Plaintiff filed applications for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI"), alleging disability beginning on October 30, 2008 due to a combination of mental and physical impairments. After her claims were denied initially and upon reconsideration, Plaintiff requested an evidentiary hearing before an Administrative Law Judge ("ALJ").

---

[1] The record reflects varying application dates ranging from December 18, 2012 through February 4, 2013. (*See, e.g.*, Tr. 193; Tr. 349-355; Tr. 356-361).

1

On July 14, 2014, ALJ Elizabeth Motta initially convened but ultimately postponed an evidentiary hearing in order to allow Plaintiff additional time to seek the appointment of counsel. On March 12, 2015, ALJ Henry Kramzyk held a second hearing at which Plaintiff again appeared without counsel. At that time, Plaintiff signed a written waiver and verbally stated her intention to proceed *pro se.* On June 17, 2015, ALJ Kramzyk denied Plaintiff's claims. (Tr. 193-211). However, on July 21, 2016, the Appeals Council remanded for further review based upon a procedural error. Specifically, the Appeals Council noted that additional post-hearing evidence had been reviewed by the ALJ and considered in his decision, without Plaintiff being provided the opportunity to examine that evidence and in the absent of a waiver of her right to review it. (Tr. 219-220).

On remand from the Appeals Council, ALJ Christopher Tindale convened a third evidentiary hearing. By that time, Plaintiff had secured counsel. Both Plaintiff and a vocational expert provided testimony. Plaintiff was 44 years old on her alleged disability onset date but had changed age category to closely approaching advanced age at the time of the ALJ's decision. (Tr. 38).[2] On the date of her last hearing, Plaintiff resided with her mother and an adult daughter. (Tr. 56). She has a high school education and past work as a waitress, as a delivery truck driver, and as an automobile appraiser.

The ALJ determined that Plaintiff has severe impairments of: "disorders of the spine, fibromyalgia, migraine, depression, and anxiety." (Tr. 32). The ALJ also acknowledged, but did not find severe, the impairments of hyperlipidemia and irritable bowel syndrome. The ALJ reasoned that none of Plaintiff's impairments, either alone or

---

[2]Plaintiff remained insured for purposes of DIB only through March 31, 2012, at which time she was still a "younger individual." Even though Plaintiff would not be eligible to receive DIB unless she proved the onset of disability prior to her date last insured, she remained eligible for SSI, and the change in age category is relevant for that purpose through the date of the ALJ's last decision.

2

in combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff would be entitled to a presumption of disability. (*Id.*)

Despite finding that Plaintiff was unable to perform her past work, the ALJ determined that she retains the residual functional capacity ("RFC") to perform a restricted range of unskilled light work, subject to the following limitations:

> [S]he is further limited to frequently climbing ramps and stairs; never climbing ladders, ropes, or scaffolds; occasionally balancing, stooping, kneeling, crouching, or crawling; avoiding more than occasional exposure to extreme cold, but no exposure to hazards or wet, uneven surfaces; frequently handling and finger; performing simple, routine tasks consistent with unskilled work in a work environment free of fast production rate or pace work; occasionally interacting with co-workers and supervisors, but no contact with the public; and performing work in a low stress environment defined as having only occasional changes in the work setting and only occasional decision making required.

(Tr. 33-34). Considering Plaintiff's age, education, and RFC, and based on testimony from the vocational expert, the ALJ determined that Plaintiff could still perform a "significant number" of jobs in the national economy, including the representative jobs of bench assembly, assembly small products/packaging/sorter, and sorter/weighing, measuring, checking. (Tr. 39). The vocational expert testified that even if Plaintiff were further limited to only frequent overhead reaching, the same positions would remain. (Tr. 39). Therefore, the ALJ issued an adverse written decision, concluding that Plaintiff was not disabled. (Tr. 29-40). The Appeals Council denied further review, leaving the ALJ's decision as the final decision of the Commissioner.

In her appeal to this Court, Plaintiff argues that the ALJ's finding that she can engage in sustained work activity is not supported by substantial evidence in the record as a whole. More specifically, Plaintiff contends that: (1) the RFC as determined does not adequately account for her limitations in concentration, persistence and pace; (2) the ALJ erred by failing to appoint a medical expert to review her most recent mental health

3

records; (3) the ALJ erred in evaluating Plaintiff's fibromyalgia; and (4) the ALJ erred by failing to address her chronic fatigue syndrome.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

**B.  Substantial Evidence Supports the ALJ's Findings**

**1.  The Determination of Plaintiff's Mental RFC**

In Plaintiff's first claim of error, she argues that the ALJ's RFC determination is not substantially supported because it does not adequately account for her limitations in concentration, persistence and pace. Plaintiff points to select pages of the record that document her symptoms of depression, anxiety and panic disorder. Indeed, the ALJ cited some of those same records when he determined that Plaintiff was moderately limited in

5

maintaining social functioning and in maintaining concentration, persistence and pace. (*See, e.g.*, Tr. 35, citing Tr. 749-750; Tr. 26, citing Tr. 911, 919).

Plaintiff concedes that the ALJ discussed the relevant medical evidence of record as well as relevant opinion evidence, including the opinions of an examining consulting psychologist, Dr. Rosenthal, who diagnosed Plaintiff in March 2013 with Depressive Disorder and Anxiety Disorder. Notably, Dr. Rosenthal "made no mention of specific functional limitations" and did not find significant limitations in Plaintiff's ability to perform substantial gainful activity. (Tr. 37; *see also* Tr. 33, 35, discussing Dr. Rosenthal's opinions). The ALJ also considered the evaluations of two state agency consulting psychologists who reviewed the record and opined that Plaintiff had no more than "mild" limitations in any functional area, based in part upon her limited treatment records as of 2013. (Tr. 37). The non-examining psychologists opined that Plaintiff's mental impairments did not even rise to the "severe" level. (*Id.*)

The ALJ gave Dr. Rosenthal's opinions "partial weight" and gave the reviewing psychologists' opinions "significant weight." (Tr. 37). However, based upon more recent treatment records that post-dated all three opinions, the ALJ found "severe" mental impairments and reasoned that none of the three psychologists fully accounted for Plaintiff's limitations in social interaction, concentration, persistence and pace.

> Thus, the undersigned finds a limitation to unskilled work with reduced stress, including restrictions in social interaction, production, and pace, are merited….
>
> While these [additional two consulting] opinions are consistent with the claimant's full range of daily living, and thus, given significant weight, as discussed above the record supports the need for restrictions in social functioning and concentration, persistence, and pace. Thus, the overall evidence supports severe mental impairments.

(Tr. 37).

6

Despite the fact that the ALJ included *greater* mental RFC restrictions than offered by any of the three psychologists, Plaintiff complains that the ALJ "used his lay opinion to make a determination regarding the work limitations that should be associated with Ms. Fresquez's mental impairments." (Doc. 7 at 8). Plaintiff argues that this case should be remanded in order to solicit additional medical opinion evidence, or alternatively, that the mental RFC as determined by the ALJ did not go far enough in accounting for Plaintiff's problems with concentration, persistence and pace. Plaintiff suggests that the hypothetical RFC fashioned by the ALJ "is not adequate on the issue of moderate limitations of concentration, persistence and pace," and that it is impossible to determine what jobs "would be excluded if quotas or other aspects related to moderate concentration limitations were added to the hypothetical question." (Doc. 7 at 8). Undermining the latter argument, however, the ALJ specifically restricted Plaintiff to an environment "free of fast production or pace work."

Plaintiff's argument that the ALJ used his "lay opinion" to determine the RFC is unpersuasive, since the ALJ alone is legally responsible for determining what limitations to include in an individual's residual functional capacity. *See* 20 C.F.R. § 404.1546(c). If the hypothetical RFC formulated by the ALJ is supported by the record, a vocational expert's testimony that an individual can engage in a substantial number of jobs will constitute substantial evidence to support the non-disability determination. *Varley v. Sec'y of HHS*, 820 F.2d 777 (6th Cir. 1987). An ALJ is not required to include restrictions in the RFC that the ALJ did not accept. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). Contrary to Plaintiff's argument, an ALJ is not required to base each RFC limitation on a specific medical opinion, so long as the RFC is supported by the record as a whole. *See Coldiron v. Com'r*, 391 Fed. Appx. 435, 439

(6th Cir. 2010); *Poe v. Com'r of Soc. Sec.*, 342 Fed. Appx. 149, 157 (6th Cir. 2009) ("[A]n ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding."); *accord Clemow v. Com'r*, 2018 WL 1083494 at *8 (S.D. Ohio Feb. 28, 2018); *see also Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

Unlike in the sole unpublished case cited by Plaintiff, no treating or examining providers assessed Plaintiff with more than moderate levels of impairment or opined that her concentration, persistence or pace were so severely impaired as to preclude all employment. *Contrast Schalk v. Com'r*, 2011 WL 4406824 (E.D. Mich. Aug. 30, 2011) (remanding where ALJ disregarded multiple treating source opinions that assessed "marked" limitations and violated treating physician procedural rule by failing to provide "good reasons" when rejecting their opinions). As stated, the ALJ assessed "moderate" mental health limitations (in Plaintiff's favor) notwithstanding opinion evidence that supported only "mild" restrictions. Also unlike in *Schalk*, here the ALJ formulated a mental RFC that was more restrictive than all medical opinions, including several restrictions beyond limiting Plaintiff to "simple, routine" work. For example, the ALJ restricted Plaintiff to only occasional interaction with co-workers and supervisors and "no contact" at all with the public. (Tr. 33). The ALJ also limited Plaintiff to a "low stress environment defined as having only occasional changes in the work setting and only occasional decision making required," and, as stated, eliminated "fast production rate or pace work." (Tr. 33-34). *Compare Schalk*, *supra* at *11 (remanding based on multiple errors but recognizing conflicts in case law on whether limitation to unskilled work alone sufficiently accounts for moderate limitations in concentration or pace).

The facts presented here also are easily distinguished from the record in *Ealy v. Com'r*, 594 F.3d 504 (6th Cir. 2010), one of the few published Sixth Circuit cases involving moderate limitations in concentration, persistence or pace.³ In *Ealy*, the Sixth Circuit held that a "streamlined" hypothetical was legally insufficient where medical sources had offered very specific pace and concentration limitations, including sustaining attention for simple repetitive tasks only in two-hour segments. *Id.*, 594 F.3d at 509. As this Court has previously observed, however, *Ealy* "'does not stand for the proposition that a finding that a claimant is limited to 'simple work' is somehow legally deficient.'" *Dickerson v. Com'r of Soc. Sec.*, 2017 WL 4020521, at *20 (S.D. Ohio Sept. 13, 2017) (quoting *Goodrich v. Com'r*, 2017 WL 1130023 at *4 (W.D. Mich. Mar. 27, 2017)). To the contrary, many post-*Ealy* decisions have confirmed that in cases that do not include such specific hourly restrictions, a limitation to simple, repetitive tasks alone can be sufficient to accommodate a moderate impairment in concentration, persistence, and pace. *See, e.g., Smith-Johnson v. Com'r of Soc. Sec.*, 579 Fed. Appx. 426 (6th Cir. 2014); *Hicks v. Com'r*, Case No. 1:13-cv-425-SJD, 2014 WL 4748356 at *6 (R&R adopted Sept. 23, 2014); *Clayton v. Astrue*, 2013 WL 427407 at *7 (S.D. Ohio Feb. 1, 2013) (collecting cases). Here, the ALJ included additional restrictions designed to accommodate Plaintiff's moderate limitations. Based upon the cited case law as well as the record as a whole, the undersigned concludes that substantial evidence supports the mental RFC as determined.

---

³Although neither party cites *Ealy*, the undersigned briefly discusses it as one of the seminal cases on point.

**2. The ALJ Was Not Required to Retain a Medical Expert**

No treating or examining physicians or psychologists offered any medical opinions suggesting that Plaintiff was disabled from all work, that she met or equaled any Listing at Step 3 of the sequential analysis, or for that matter, that she had any specific functional limitations at all. In the absence of medical opinions from treating sources, the ALJ based his RFC findings partially upon consulting psychological and medical opinions as well as upon the ALJ's review of the record as a whole. In her second claim of error, Plaintiff complains that the ALJ should have appointed a medical expert ("ME") in order to review additional mental health treatment records generated after the date of the most recent (July 2013) consulting psychologist opinions. Plaintiff points out that much of her mental health treatment occurred after that date, leading up to the third evidentiary hearing held on September 30, 2016. She asserts that an ME's review of her most recent treatment records might have undermined the earlier consulting opinions that her impairments did not meet or medically equal any Listing. However, Plaintiff's assertion rests in part upon the same faulty premise as her first claim – that an ALJ's RFC findings can only be upheld if supported by a specific medical opinion. Neither the regulatory scheme nor case law support that premise.

On the record presented, the ALJ appropriately addressed the most recent treatment records in determining that additional mental RFC limitations beyond those addressed in the 2013 psychological opinions were supported by those records. The ALJ noted that increased psychotropic medications caused side effects of fatigue, but that when medications were decreased, Plaintiff experienced an increase in symptoms resulting in some (but not incapacitating) limitations:

> [T]he record shows that with increased psychotropic therapy, the claimant's allegations of fatigue increased. However, when the medications were

> reduced, her anxiety increased. Thus the undersigned finds a limitation to unskilled work with reduced stress, including restrictions in social interaction, production, and pace, are merited.

(Tr. 37). Because the ALJ directly addressed the most recent treatment records, including the fact that they post-dated the 2013 consulting opinions, I find no error. *See Kelly v. Com'r*, 314 Fed. Appx. 827, 831 (6th Cir. 2009) ("There will always be a gap between the time the agency experts review the record and give their opinion[s] with respect to the Listing and the time the hearing decision is issued.").

Plaintiff cannot show that the failure to employ an additional consultant as a medical expert to review the Listings anew was error. Ultimately, it remains the Plaintiff's burden at Step 3 to show that she meets or equals every component of a Listing. "For a claimant to show that [her] impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis original). At the hearing before the ALJ, "neither the claimant nor her counsel contended that any of [her] severe impairments actually met or equaled a Listing." (Tr. 32).[4] Nevertheless, the ALJ explicitly considered Listings 12.04 and 12.06 for depression and/or anxiety prior to concluding that Plaintiff had not met her burden to demonstrate that she met or medically equaled any Listing on the record presented. (*Id.*)

The regulations only require an ALJ to obtain an updated medical opinion if "in the opinion of the ALJ" the additional evidence may change a medical consultant's finding on medical equivalence. SSR 96-6-, 1996 WL 374180 at *4. Because the ALJ made no such determination in this case and did not find that Plaintiff was disabled under any

---

[4]Rather than arguing that Plaintiff met any specific Listing, counsel specifically argued that her "combined medical impairments" specifically including back and neck problems, fibromyalgia, headaches, and anxiety and depression would cause her to be unable to sustain full-time employment. (Tr. 53).

Listing, the ALJ was not required to retain an ME to obtain an updated consulting opinion. *See generally, Courter v. Com'r of Soc. Sec.*, 479 Fed. Appx. 713, 723 (6th Cir. 2012) (ALJ complied with SSR 96-6p when he reviewed the more recent records and determined that Listing was not met). In short, the undersigned finds no error in the ALJ's failure to employ a medical expert in this case.

### 3. The ALJ's Analysis of Plaintiff's Fibromyalgia Does Not Support Remand

In her third claim, Plaintiff argues that the ALJ erred by failing to evaluate her fibromyalgia ("FM") in a manner consistent with SSR 12-2p. Although the ALJ clearly found fibromyalgia to be a severe impairment at Step 2, she complains that he failed to adequately consider her FM at Step 3, and also failed to include sufficient accommodations in RFC at Steps 4 and 5 of the sequential analysis to account for her "fatigue, chronic pain and resulting inability to perform substantial gainful activity on a sustained basis, without additional absences and time off task." (Doc. 7 at 13).

Plaintiff's assertions are unconvincing. As discussed above, neither Plaintiff nor her counsel so much as *argued* before the ALJ that she met or equaled any Listing at Step 3, and Plaintiff fails to meet her burden to show that she demonstrated functional equivalence to any Listing before this Court. The ALJ explicitly considered multiple Listings, including 1.02 (dysfunction of a joint), 1.04 (disorder of the spine) as well as the previously referenced mental health listings. Although Plaintiff now suggests that Listing 14.09(D) (for inflammatory arthritis) may have applied, she fails to cite any evidence that would meet her burden to prove that she would have met or equaled the Listing if only the ALJ had considered it. *See Boersma v. Com'r*, 2018 WL 1187805 at *6 (S.D. Ohio March 7, 2018) (noting cases holding that an ALJ is not required to consider Listing 14.09(D) where a claimant suffers from fibromyalgia; holding that ALJ committed no error

where Plaintiff failed to show that she suffered from at least two of the "constitutional symptoms" of Listing 14.09(D), or that she suffered any "marked" limitations). An ALJ is not requirement to explicitly discuss each and every theoretically applicable Listing, where the record does not support its applicability and Plaintiff has failed to carry her burden to prove its components. *Id.*

As with any other diagnosis, the mere diagnosis of fibromyalgia conveys little to nothing about the degree of functional limitations. *See Hill v. Com'r*, 560 Fed. Appx. 547, 551 (6th Cir. 2014) (citing *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1998)). While some people with a diagnosis of fibromyalgia are totally disabled from working, most are not. *See Vance v. Com'r*, 260 Fed. Appx. 801, 806 (6th Cir. 2008). Plaintiff fails to show that her FM supported any different or greater limitations at Steps 4 and 5 of the sequential analysis than those determined in this case. The ALJ discussed the relevant medical evidence relating to Plaintiff's FM, including her improvement with treatment after her diagnosis. (Tr. 35). The ALJ cited Plaintiff's remote spinal surgery compounded by her FM and cervical impairment when he limited her to light work with additional postural restrictions, frequent handling and fingering, only frequent climbing ramps and stairs, no climbing of ladders, ropes or scaffolds, and no more than occasional exposure to extreme cold and no exposure to hazards or wet, uneven surfaces. (Tr. 36). The ALJ also considered the mental limitations associated with fibromyalgia and imposed multiple restrictions, as previously discussed.

The ALJ's analysis complies with SSR 12-2 because he reviewed the totality of the evidence over time. (Tr. 32-37). The ALJ noted that Plaintiff's FM was well-controlled with medication, as were other severe impairments including depression and migraines. (Tr. 36, citing Tr. 787, 854, 989). He noted that Plaintiff cared for her granddaughter and

13

mowed grass for exercise, undermining her allegations of total disability due to fibromyalgia. (Tr. 26, citing Tr. 787, 854). The ALJ's RFC findings as they relate to Plaintiff's fibromyalgia are substantially supported.

### 4. The Failure to Discuss Chronic Fatigue Syndrome Was Harmless Error

In her final claim of error, Plaintiff asserts that remand is required for further consideration of her diagnosis of chronic fatigue syndrome ("CFS"). Plaintiff is correct that the ALJ did not explicitly list that diagnosis at Step 2 of the sequential analysis, when he listed which impairments that he found to be "severe" along with two impairments (hyperlipidemia and irritable bowel syndrome) that he found not to be severe.[5] In general, if an ALJ fails to address an impairment at Step 2, the error is harmless as long as the ALJ found at least one severe impairment and continued the sequential analysis through the determination of a plaintiff's residual functional capacity. *See Maziarz v. Sec'y of Health & Human Servs.*, 847 F.2d 240, 244 (6th Cir. 21987).

Here, the ALJ's error in failing to discuss Plaintiff's CFS was harmless and does not require remand on the record presented. As with her FM, Plaintiff fails to identify any functional limitations attributable to her CFS that were not considered by the ALJ. Instead, Plaintiff merely refers to SSR 14-1p, which establishes the elements required to establish CFS. As discussed above, however, a diagnosis alone reveals nothing about functional limitations. *See Hill v. Com'r*, 560 Fed. Appx. at 551 (finding no error where Plaintiff failed to cite any evidence to show that inclusion of additional severe impairment would have changed the AALJ's assessment of her functional limitations). *See also generally*

---

[5]The ALJ stated that Plaintiff has alleged or been diagnosed with "impairments that are not demonstrated…to be severe," which "*include* hyperlipidemia and irritable bowel syndrome." (Tr. 32, emphasis added).

*Rabbers v. Com'r*, 582 F.3d 647 (6th Cir. 2009) (defining harmless error standard applicable to social security appeals). In the absence of any specific argument concerning additional functional limitations allegedly caused by her CFS, the undersigned assumes that Plaintiff's primary complaint is that her CFS caused fatigue. However, the ALJ specifically discussed records in which Plaintiff complained of fatigue and low energy, among other symptoms. (Tr. 36). The ALJ was not required to incorporate additional fatigue-related limitations because the ALJ did not credit Plaintiff's testimony that she suffered any additional work-related limitations. *Accord Montecalvo v. Com'r of Soc. Sec.*, 695 Fed. Appx. 124, 129 (6th Cir. 2017) (noting adverse credibility determination and rejecting claim that consideration of SSR 14-1p would have changed the outcome of plaintiff's CFS-related claim); *Dwigans v. Com'r*, 2018 WL 4216844 (S.D. Ohio Sept. 5, 2018); *Rounds v. Com'r*, 2016 WL 5661594 (E.D. Mich. Sept. 30, 2016).

Although Plaintiff testified to experiencing "chronic fatigue" related to tachycardia, (Tr. 62), the ALJ determined that Plaintiff's subjective complaints regarding the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 34; *see also* Tr. 36, stating "allegations of debilitating pain and mental symptomatology are not supported by the record to the level alleged"; Tr. 37, "the evidence does not support the severe functional limitations the claimant alleges."). Plaintiff has waived any challenge to the adverse credibility finding by failing to specifically challenge it. *See generally, Swain v. Com'r of Soc. Sec.*, 379 Fed. Appx. 512, 517-518 (6th Cir. 2010) (a failure to raise a claim on the merits constitutes waiver). In addition to his review of medical records that were inconsistent with disability, the ALJ noted that Plaintiff is "fairly active with mostly intact

activities of daily living, including providing care for her granddaughter…and mowing grass for exercise." (Tr. 36).

A plaintiff's contrary view of the evidence does not support reversal where the ALJ's analysis is substantially supported. The undersigned has carefully reviewed all cited records but concludes that none support functional limitations at a disabling level from Plaintiff's CFS or from any other condition or combination of conditions.

### III. Conclusion and Recommendation

In conclusion, I find no error in the ALJ's assessment of Plaintiff's credibility, or in her overall non-disability determination. "Discretion is vested in the ALJ to weigh all the evidence," and the ALJ here did not abuse that discretion. *Collins v. Com'r of Soc. Sec.*, 347 Fed. Appx. 663, 668 (6th Cir. 2009) (internal quotation marks and citation omitted). Plaintiff's argument that the ALJ erred in this case based upon what she alleges is substantial evidence to support a different conclusion does not support reversal, because there is a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d at 773.

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be **AFFIRMED** as supported by substantial evidence, and that this case be **CLOSED.**

                                              */s Stephanie K. Bowman*
                                              Stephanie K. Bowman
                                              United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| KRISTA ANN FRESQUEZ, | Case No. 1:18-cv-114 |
| Plaintiff, | Barrett, J. |
| | Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).